CONDERMAN v. CLEMENTS.

(Circuit Court of Appeals, Fourth Circuit. July 14, 1906.)

No. 589.

1. Patents—Invention—Pleasure Wheel.

The Conderman patent, No. 669,621, for a pleasure wheel similar to the Ferris wheel, except that it is lighter and the parts are detachable, so that it may be taken apart to facilitate its transportation from place to place, is void for lack of invention; the only changes over prior portable structures of the kind being such as required only mechanical skill to make.

2. Same—Suit for Infringement—Defense of Lack of Invention.

It is the duty of the court to dismiss a suit brought to restrain infringement of a patent where the structure is not patentable, even though the defense be not set up in the answer.

Appeal from the Circuit Court of the United States for the District of Maryland, at Baltimore.

Infringement of patent No. 669,621, dated March 12, 1901, on application filed September 4, 1900, for "improvement in pleasure wheels" granted to J. G. Conderman.

The following is the opinion of Morris, District Judge:

In this case, although it has been fully argued by counsel for both parties, there has been put in by the defendant no admissible testimony, and the sole defense relied upon is want of patentable invention in the complainant's device apparent upon an inspection of the letters patent and a consideration of complainant's testimony. The patent is for a rotating structure for carrying passengers up to some elevation in the air after the manner of the well-known Ferris wheel. It differs from the Ferris wheel because it is intended to be transported from place to place, and set up and taken down as frequently as the effort to reach a new and profitable location for operation requires. The specification states "this invention pertains to improvements in that class of pleasure wheels in which a skeleton wheel turns on a horizontal axis, and carries a circumferential series of cars or seats for the passengers, the object of the improvement being to secure safety, lightness, ease of running, perfection of control, and facility for quick and easy erection and razing. The improvements will be readily understood from the following description taken in connection with the accompanying drawings," and then follows a most minute and detailed statement of the various beams, cross-ties, truss rods, base beams, uprights, guy rods, turn-buckles, gallows frames, axles, spokes, ties for securing the spokes and a driving shaft, counter-shaft, separable seats and a brake mechanism. All (87) these members are described as separable from each other and capable of being readily taken apart and transported on cars or wagons. No special feature is designated in the specifications as new in function, operation, or result, and the 21 claims are simply for so many combinations, of the separable parts, the essential claim in each being that the parts are constructed so as to be detachable one from the other to the end that they may be readily assembled for installation or disassembled for transportation.

The first claim is as follows, and the others are similar in that the elements of each combination are stated to be separable, removable, or detachable: "I claim as my invention—(1) In a pleasure-wheel, the combination substantially as set forth a separable parallel pair of base-beams, a separable pair of base-beams disposed over the first pair of base-beams and secured at right angles thereto, two separable uprights supported by the base-beams, providing a clear space between said uprights, separable guys extending from the top of the uprights to the extremities of the intersecting base-beams, and a separ-

able wheel journaled in boxes carried at the upper ends of the uprights." It must be conceded that all the parts and all the devices by which the parts are made detachable, and all the devices by which they can be made fast to each other and drawn tight are in common use for the several purposes for which they are used in this construction. It must be conceded also that the idea of making structures similar to complainant's, which are used at fairs and with traveling shows, so that they can be readily taken down and set up again is not a new idea. Merry-go-rounds and swings, and similar amusement devices are commonly so constructed. As complainant's structure differs from the Ferris wheel and similar observation wheels only in its parts being light and separable, if his patent is sustained he will probably have a monoply of all portable pleasure wheels of this class without having been the first to conceive the idea of a portable wheel, and without having invented any new device entering into its construction. If Conderman had constructed a permanent wheel precisely as he did the one patented except that instead of its parts being detachable they had been fastened together by rivets and bolts and the structure anchored in the ground it would not be contended that he had invented anything. He would simply have made a lighter and less costly Ferris wheel. Can it be said that connecting the parts together with hooks and detachable fasteners required invention? It seems to me that once having determined to construct a portable wheel all that was done by Conderman was the result of only mechanical skill and experiment. The only element of the combination that would not be found in a permanently stationary pleasure wheel of the same class is the separable pair of base-beams disposed over the first pair of base-beams and secured at right angles thereto. But this device for supporting a movable upright is frequently seen in music stands, reading desks, work tables, and many larger articles as well, except that they are not usually made separable.

The deposition of Jay G. Conderman, who, as the inventor, applied for the patent, narrates how he contrived his first pleasure wheel, and his deposition is perfectly consistent with mere mechanical experiment. He says that he completed the first wheel about March 1, 1899. That in its construction he met with numerous mechanical difficulties and had to rebuild and strengthen different parts. That the wheel was not strong enough to carry the passengers, and was not easily set up and taken down, and he had to rebuild and renew different parts, and finding that the spokes of the wheel would bend when the wheel was stopped or started he had to put in extra braces, and he was kept constantly studying out the proper strength of the working parts, and how to remedy their defects. This is the substance of all that he himself claims to have done.

Undoubtedly, it requires enterprise to risk the success commercially of investing money and labor in such a structure, and undoubtedly it required thought and experiment to determine how light the parts could be safely made, what guys were required to support the structure, and how many rods were required to stiffen the wheel so as to prevent bending the spokes in starting and stopping. All these were matters of detail requiring mechanical skill and experiment, but that is quite a different thing from invention. All the parts act together just as they would if permanently fastened, their mode of operation and their functions are precisely the same. It is only the convenience of being detachable that differentiates one construction from the other. The following are among the cases which discuss the difference between patentable invention and mere mechanical skill, viz.: Morris v. McMillin, 112 U. S. 244, 5 Sup. Ct. 218, 28 L. Ed. 702; Pope Mfg. Co v. Gormully, 144 U. S. 254, 12 Sup. Ct. 643, 36 L. Ed. 426; Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 13 Sup. Ct. 850, 37 L. Ed. 707; Thatcher Heating Co. v. Burtis, 121 U. S. 286–294, 7 Sup. Ct. 1034, 30 L. Ed. 942; Palmer v. Corning, 156 U. S. 342, 15 Sup. Ct. 381, 39 L. Ed. 445; Consolidated Roller Co. v. Walker, 138 U. S. 124, 11 Sup. Ct. 292, 34 L. Ed. 920.

The complainant's assignor, no doubt, has the merit of having constructed a practically portable pleasure wheel which has proved a success, but I have not been able to bring myself to decree in her favor for the reason that I cannot come to the conclusion that what her assignor produced has any element

of invention that can be made the subject of a patent. It is the duty of the court to dismiss a suit brought to restrain infringement where the structure is not patentable even although the defense be not set up in the answer. Slawson v. Grand St., P. P. & F. R. Co., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576; Brown v. Piper, 91 U. S. 41, 23 L. Ed. 200; Terhune v. Phillips, 99 U. S. 592, 25 L. Ed. 293.

It is urged that the fact that the complainant obtained a decree for a perpetual injunction against a similar infringer in the case of Conderman v. Johnson, in the Circuit Court of the United States for the District of Indiana, is an adjudication sustaining the patent which should have weight in this litigation. It sufficiently appears, however, in that decree, a copy of which is filed as an exhibit, that the case was undefended, and the court is careful to state that it was only in view of the prima facie validity of the patent that it was held valid.

I am of the opinion that the injunction must be refused, and the bill dismissed.

Fenelon B. Brock, for appellant.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

PER CURIAM. There is no error in the decree appealed from, and the same is affirmed.